**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| O'NEAL HENDERSON,<br>on behalf of himself and all others<br>similarly situated<br><br>    Plaintiff,<br> vs.<br><br>HIRERIGHT SOLUTIONS, INC., and<br>USIS COMMERCIAL SERVICES, INC.,<br><br>    Defendants. | C.A. No. 10-<br><br>CLASS ACTION<br><br><br>Jury Trial Demanded |

**CLASS ACTION COMPLAINT**

**I. Preliminary Statement**

  1. This is a consumer class action based upon Defendants' willful violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"). Plaintiff brings this action on behalf of thousands of employment applicants throughout the country who have been the subject of prejudicial, misleading and inaccurate background reports performed by the Defendants and sold to employers. Defendants have adopted and maintained a policy and practice of failing to timely update such applicants' criminal record histories to show that such records have been expunged, thus not accurately reflecting the final disposition. The prejudice caused by the erroneous reporting is exacerbated by Defendants' failure to notify the consumer contemporaneously of the fact that the erroneous criminal record information is being sent to the employer, and Defendants' failure to maintain strict procedures to assure that expunged records are removed from their reports and that the information is complete and up to date. As a result, consumers who are entitled to receive copies of their credit files from Defendants pursuant to section 1681k of the FCRA are deprived of full disclosure, and unable to adequately verify and/or dispute the accuracy of the information that Defendants are selling to employers. Defendants' practice harms consumers seeking employment by prejudicing their prospective

employers with inaccurate and misleading information, and harms interstate commerce as a whole.

## II. Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. Parties

4. Plaintiff O'Neal Henderson is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 3910 Delhi Street, Philadelphia, Pennsylvania 19140.

5. Defendant HireRight Solutions, Inc. ("HireRight") is a Delaware corporation that regularly conducts business in Philadelphia County, Pennsylvania.  HireRight has headquarters in Irvine, California, and a principal place of business located at 4500 South 129th East Avenue, Suite 200, Tulsa, Oklahoma 74134-5885.

6. Defendant USIS Commercial Services, Inc. ("USIS") is a Delaware corporation that regularly conducts business in Philadelphia County, Pennsylvania.  USIS has a principal place of business located at 4500 South 129th East Avenue, Suite 200, Tulsa, Oklahoma 74134-5885.  USIS and HireRight recently united under the HireRight brand name.

## IV. Factual Allegations

### A. Defendants' Practices As A Consumer Reporting Agency And Furnisher Of Consumer Reports For Employment Purposes

7. At all times pertinent hereto, Defendants USIS and HireRight were each a consumer reporting agency ("CRA") as defined by section 1681a(f) of the FCRA.

8. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information.

9. Defendants maintain consumer files, which contain public record information concerning, among other things, the criminal record history of individuals.

10. Defendants sell such consumer files to potential employers wishing to investigate the criminal record history, or lack thereof, with regard to various job applicants. According to a HireRight press release from March 2009, the Defendant sells background reports to more than 28,000 businesses across the country.

11. When a CRA furnishes a consumer report for employment purposes, and compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment, the CRA, at the time the public record information is reported to the user of the consumer report, must notify the consumer of the fact that public record information is being reported by the CRA, together with the name and address of the person to whom such information is being reported.

12. A CRA is also required to maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported, that it is complete and up to date.

13. A CRA is also required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

14. Despite these clear and unambiguous requirements of the FCRA, Defendants neither notify the consumer contemporaneously of the fact that public record information is being reported by Defendants, nor do they maintain strict procedures designed to insure that such information is complete and up to date, nor do they utilize reasonable procedures designed to assure maximum possible accuracy. Based upon a common policy and practice, Defendants regularly and illegally report a criminal record that has been expunged by court order, so that the individual's criminal record history appears more serious than it actually is.

15. Defendants' practice not only violates the FCRA as a matter of law, it exacts serious consequences on consumer job applicants and interstate commerce. When consumers have been reported as having criminal history records that have actually been expunged by court order, they are undoubtedly viewed as less desirable job applicants and more likely not to be hired by the employers who pay Defendants to issue such reports.

16. Further, such consumers are prejudiced in their ability to adequately determine whether the information is being accurately reported. Pursuant to Defendants' practice, by the time the consumer is made aware of the inaccurate reporting, it is too late to correct the information because it has already been sold to the employer by the Defendants and has formed the basis of a decision whether to hire the applicant.

17. Despite their duties to notify the consumer contemporaneously of the fact that the expunged criminal record information is being sent to the employer, to maintain strict procedures to assure that criminal record information is complete and up to date, and to utilize procedures designed to assure maximum possible accuracy of the criminal record information they sell to prospective employers, Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently adopted a policy and practice that disregards these duties, in violation of the FCRA.

**B.     The Experience of The Representative Plaintiff**

18. In July 1995, Mr. Henderson had been arrested as a result of an unfortunate encounter with the Philadelphia Housing Authority police within hours of learning of the death of his father. Mr. Henderson was found guilty of simple assault and resisting arrest, and sentenced to less than a year of probation.

19. In connection with the July 1995 incident, Mr. Henderson was also found not guilty of three other charges (recklessly endangering another person, simple assault, and resisting arrest other law enforcement) and a charge of aggravated assault was dismissed.

20. In January 2007, Mr. Henderson was arrested in connection with an alleged sexual assault. All charges were withdrawn by the District Attorney.

21. By court Orders dated May 18, 2009 (the "Expungement Orders"), the aforementioned charges of which Mr. Henderson was not convicted were ordered expunged by the Court of Common Pleas, Criminal Trial Division, for Philadelphia County.

22. Certified copes of the Expungement Orders were ordered to be served on the Philadelphia Police Department, Expungement Unit; the Pennsylvania State Police, Central Records; the Administrative Office of Pennsylvania Courts ("AOPC") Expungement Unit; and, the First Judicial District of Pennsylvania, Data Processing Unit.

23. The Expungement Orders further ordered that the arresting agency shall destroy or deliver to the defendant or his representative all criminal records, fingerprints, photographic plates and photographs pertaining to the expunged charges, and also ordered the Pennsylvania State Police to request the Federal Bureau of Investigation to return to them all records pertaining to the arrests, to be destroyed upon receipt.

24. In Pennsylvania, criminal court records are made publicly available at no cost and with no restrictions in a database maintained by AOPC and available on its website.

25. Upon information and belief, Mr. Henderson's expunged charges were removed from AOPC's database within days of the May 18th expungement order.

26. As of the removal of the expunged charges from AOPC's database, any preparer of a background check would have been aware that it was no longer appropriate to report the expunged charges.

27. In May 2009, Mr. Henderson applied for the position of truck driver with Road Link USA ("Road Link").

28. Road Link employed Defendant USIS to perform a public record information search on Mr. Henderson.

29. On or about June 4, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 4 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [Road Link]. This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

30. The June 4 Report comprised over ten pages and reported the expunged cases multiple times.

31. On June 9, 2009, Mr. Henderson's attorney sent Defendant USIS a letter notifying Defendant of, and enclosing copies of, the Expungement Orders. Mr. Henderson's attorney demanded that Defendants USIS or HireRight immediately remove the expunged cases from their data bases and not report them in any further criminal record report on Mr. Henderson.

32. Around the same time in 2009, Mr. Henderson applied for the position of truck driver with Prime, Inc. ("Prime").

33. Prime employed Defendant USIS to perform a public record information search on Mr. Henderson.

34. On or about June 10, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 10 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [Prime]. This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

35. The June 10 Report comprised over ten pages and reported the expunged cases multiple times.

36. Around the same time in 2009, Mr. Henderson applied for the position of truck driver with CR England, Inc. ("CR England").

37. CR England employed Defendant USIS to perform a public record information search on Mr. Henderson.

38. On or about June 18, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 18 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [CR England].  This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

39. The June 18 Report comprised over ten pages and reported the expunged cases multiple times.

40. Around the same time in 2009, Mr. Henderson applied for the position of truck driver with Western Express, Inc. ("Western Express").

41. Western Express employed Defendant USIS to perform a public record information search on Mr. Henderson.

42. On or about June 22, 2009, USIS sent Mr. Henderson a copy of his consumer report (the "June 22 Report") accompanied by a letter which stated in part that "this letter is notification that the enclosed Public Record Information on [Mr. Henderson] has been ordered and is being provided to [Western Express].  This notice is being sent to you pursuant to Section 613 of the Fair Credit Reporting Act."

43. The June 22 Report comprised over ten pages and reported the expunged cases multiple times.

44. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

45. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## V.   Class Action Allegations

46. Plaintiff brings this action individually and as a class action for Defendants' willful violation of sections 1681k and 1681e(b) of the FCRA, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Class: All natural persons residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of this Complaint who were the subjects of background reports in which expunged criminal charges were reported and to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report.

47. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the Class numbers in the thousands. Defendants sell criminal history record information to thousands of businesses throughout the country, and their reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.

48. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions include (a) whether the Defendants willfully violated section 1681k of the FCRA by failing to notify

consumers contemporaneously of the fact that criminal record information is being sent to prospective employer, (b) whether Defendants willfully violated section 1681k of the FCRA by failing to maintain strict procedures to assure that the information is complete and up to date, and (c) whether Defendants, by employing a policy and practice of disclosing expunged criminal record histories, willfully violated section 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

49. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

50. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

51. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

52. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

53. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small as the maximum statutory damages are limited to $1,000.00 under the FCRA. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI. COUNT ONE - FCRA

54. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

55. Pursuant to section 1681n of the FCRA, Defendants are each liable for willfully violating the FCRA by engaging in the following conduct:

(a) failing to notify consumers contemporaneously of the fact that criminal record information is being provided to prospective employers;

(b) failing to maintain strict procedures to assure that the information is complete and up to date;

(c) failing to utilize procedures designed to assure maximum possible accuracy of the information they sell to prospective employers; and, (section 1681e(b)?)

(d) otherwise failing to comply with the FCRA.

## VII. JURY TRIAL DEMAND

56. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in favor of himself and the Class for the following:

(a) That an order be entered certifying the proposed Class under Rule 23 of the

Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

 (b) That an order be entered declaring that Defendants' actions as described above are in violation of the FCRA;

 (c) That judgment be entered against Defendants for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

 (d) That judgment be entered against Defendant for punitive damages pursuant to 15 U.S.C. §§ 1679g(a)(2), 1681n(a)(2);

 (e) That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1679g(a)(3), 1681n and 1681o; and

 (g) That the Court grant such other and further relief as may be just and proper.

Dated: February 1, 2010

Respectfully submitted,

**COMMUNITY LEGAL SERVICES, INC.**
Sharon M. Dietrich
Janet Ginzburg
1424 Chestnut Street
Philadelphia, PA  19102
215-981-3700

**DONOVAN SEARLES, LLC**

By: *s/ David A. Searles*
David A. Searles
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**FRANCIS & MAILMAN, P.C.**
James A. Francis
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff and the Class